# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**STANLEY GARCIA, JR.,**

    Plaintiff,

vs.

                            Civ. No. 00-1024 MV/RLP

**WILLIAM A. HALTER,**
Acting Commissioner of Social Security,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     Plaintiff, Stanley Garcia, Jr., ("Plaintiff" herein), filed an application for Supplemental Security Income (SSI) under title XVI of the Social Security Act on October 29, 1997, alleging that he had been disabled since October 5, 1997. His application was denied at the first and second levels of administrative review (Tr.23-25, 95-99, 104-111), and by an Administrative Law Judge (ALJ herein). (Tr.15-20). The Appeals Council declined to review the ALJ's decision. (Tr. 7-8).

2.     Plaintiff's Complaint in this Court contests the decision of the Commissioner of Social Security denying his claim. The matter now before the Court is Plaintiff's Motion to Reverse and Remand for rehearing. Plaintiff contends that the Commissioner, through his ALJ, committed the following errors:

        A.     The ALJ's finding that Plaintiff had the residual functional capacity for light work is not supported by substantial evidence.

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



B.  The ALJ committed an error of law by utilizing the Grids at step five of the sequential evaluation process.

C.  The ALJ committed an error of law by considering the impact of Plaintiff's alcohol abuse prior to finding him disabled.

D.  The ALJ's finding that Plaintiff's alcohol abuse was contributing factor material to the disability determination is not supported by substantial evidence.

## I.  Standard of Review

3.  This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute our discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

4.  The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. Id.

## II. Vocational and Medical Facts

5. Plaintiff was 54 years of age at the time of the administrative hearing. (Tr. 139). He has a marginal (4th grade) education, but can read and write English. (Tr. 140). His past relevant work has been as a plaster and laborer. (Tr. 139). Plaintiff alleged disability based on a hip injury and numbness of his hands. (Tr. 45, 60, 145).[2]

6. Plaintiff testified that he injured his hip in fall from a bicycle in 1992 or 1993. (Tr. 142,144). Although there are no medical records documenting care received at that time, Plaintiff stated that saw a "Dr. Pesker" right after the fall, that x-rays were taken of his hip, but that the doctor said nothing to him about his hip.[3] (Tr. 143). Plaintiff testified that his right leg sometimes gives out, that both legs are numb, the right being worse than the left, that he walks with a limp, can only walk a couple of blocks and can only stand for ten minutes. (Tr. 145-147). He takes no medication for his hip. (Tr. 88).

7. Plaintiff was examined by Dr. Paul Greenbaum, an internist, on February 10, 1998. (Tr. 88-94, 114). Dr. Greenbaum noted Plaintiff's history of possible hip fracture. He evaluated Plaintiff's lower extremities, documenting significant difficulty walking, a slow, broad based gait, unsteadiness on turning, a right limp, some atrophy of the right calf, but no limitation of range of hip motion or tenderness or deformity of the hip. During the exam, Plaintiff was able to bend forward and pick

---

[2] Plaintiff also alleged impairment caused by liver problems and rheumatism. (Tr. 45). The ALJ found no medical evidence to document impairment due these causes. (Tr. 15). This finding has not been disputed. Plaintiff also alleged impairment caused by high blood pressure. (Tr. 45). This claim was not raised in this appeal, and will not be addressed further.

[3] Although there are no records from a Dr. "Peskar," Plaintiff has been seen by a Dr.Bhasker. (Tr. 79-81). On August 13, 1997, Dr. Bhasker noted that Plaintiff complained of a limp, possibly caused by a fall from a bicycle. His evaluation of this complaint, if there is one, is not legible to the court. ( Tr. 79).

3

a seven-pound item from the floor, had no evidence of muscle spasm, and could stand, stoop, squat sit and bend without difficulty. Dr. Greenbaum indicated that Plaintiff's ability to lift and carry was limited because of his right hip problem, but did not quantify the extent of the limitation. He also indicated that Plaintiff's ability to walk was limited to 4 hours in an eight hour day for one-half hour at a time.

8. The administrative record contains residual functional capacity assessments prepared by two non-examining physicians, Melvin Golish, M.D., an orthopedic surgeon (Tr. 95-102, 113), and Nancy Nickerson, M.D., a diagnostic radiologist.[4] (Tr. 104-111, 115). Based on a review of records, both concluded that Plaintiff could occasionally lift twenty pounds, frequently lift 10 pounds, stand and/or walk for two hours in an eight hour day, sit for six hours in an eight hour day, and that Plaintiff's ability to push or pull with his right leg was limited. Dr. Nickerson added that "The proposed restriction to light work is reasonable." (Tr. 111).

9. Plaintiff stated that he first noted problems with his hands six-months before seeing Dr. Greenbaum. (Tr. 88). He described numbness, cramping and difficulty grasping. (Tr. 88-89,141-142, 145-146). Dr. Greenbaum evaluated Plaintiff's hand complaints:

> There is decreased light touch sensation over . . . the upper extremities distal to the elbow. He can feel light touch normally over each arm . . . Grip strength is +3/5 bilaterally. . . He is able to bend forward and lift a seven pound book from the floor with both of his hands and hand it to me. With his eyes closed, Mr. Garcia can identify a set of keys I placed in his left hand. . . . Mr. Garcia smokes cigarettes with his right hand, but he is able to print his name correctly with his left hand . . . Forearm DTR's are +3/4 bilaterally . . . Mr. Garcia was able to unbutton his shirt, but with difficulty. He was able to untie his shoes, take off his shoes and socks as well as to dress himself by putting on his shoes and socks as well as tying his shoes. . . .

---

[4] It is not altogether clear that Dr. Nickerson actually prepared the RFCA. At Tr. 111, Dr. Nickerson wrote "This RFC was completed by DTL . . . N Nickerson M.D."

4

> He has extremely diffuse decreased light touch sensation. I do not have a cause for this, although alcoholic polyneuropathy must be considered.. . .It is my opinion that he is able to . . . handle without difficulty. (Tr. 89-90).

10. In March 1997 Plaintiff was admitted to a hospital overnight for acute alcoholic gastritis, with a history of chronic alcoholism. (Tr. 17, 74). In November 1997 he was again admitted to the hospital for treatment of rib fractures after falling from a bicycle. (Tr. 86). He had a heavy odor of alcohol on his breath and an elevated blood alcohol level (Tr. 85-86). When evaluated by Dr. Greenbaum in February 1998, Plaintiff stated that he had liver problems and had been advised to stop drinking. (Tr. 88). Dr. Greenbaum found no clinical evidence of liver disease, but felt that Plaintiff might be experiencing alcoholic polyneuropathy of his upper extremities. (Tr. 90).

### III.   Analysis and Recommendation

####   A.   The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity and in Applying the Medical Vocational Guidelines.

11. The ALJ found that Plaintiff had the residual functional capacity for light work, relying specifically on the evaluation by Dr. Nickerson, which he characterized as "supported by the medical record as a whole." (Tr. 17-18). He then applied Rule 202.11[5] of the Medical-Vocational Guidelines ("Grids," herein) with out consulting a vocational expert, and concluded that Plaintiff was not disabled. (Tr. 19).

12. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking or standing, or pushing and pulling when sitting is involved. .20 C.F.R. §416.967(b); West's Social Security

---

[5]Rule 202.11 describes an individual closely approaching advanced age, with limited education or less, with prior skilled or semi-skilled work experience which is not transferable, who retains the residual functional capacity for light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.11.

5

Reporting Service, S.S.R. 83-10, p. 29. "(t)he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hours workday. Sitting may occur intermittently during the remaining time." S.S.R 83-10.

13. There is no substantial evidence that Plaintiff has the residual functional capacity for the standing and walking required for the full range of light work. Dr. Greenbaum indicated that plaintiff's walking tolerance was limited to four hours per day. Drs. Golish and Nickerson indicated a more limited tolerance of walking or standing for four hours per day. Given the exertional limitations she found existent, Dr. Nickerson's comment that a "proposed restriction to light work is reasonable" is not substantial evidence of an ability to perform the walking and standing required for light work.

14. Plaintiff is not capable of performing the full range of light work. I recommend that this matter be remanded to the Commissioner for additional proceedings at step five of the sequential evaluation process, to include obtaining testimony from a vocational expert or other acceptable vocational source.

### B. Applicability of Pub. L. 104-121

15. Plaintiff contends that the ALJ made two errors relevant to his history of alcoholism. First, that it was error to considering the impact of his alcoholism before determining that he was disabled. Second, the finding that alcoholism was a factor material to a determination of disability was not supported by substantial evidence.

16. Congress amended the definition of disability in the Contract with America Advancement Act of 1996, Pub. L. 104-121, §105(a)-(b), 110 Stat. 847, 853-854 (codified as amended 42 U.S.C. §§423(d)(2)(c), 1382c(a)(3)(J)). Under the new definition, an individual seeking benefits under Title

II and Title XIV "shall not be considered to be disabled . . . if alcoholism . . .would (but for this subparagraph) be a contributing factor material to the Commissioner's determination of disability." See 20 C.F.R. §§ 404.1535, 416.935.

17. The first argument raised by Plaintiff was also raised, and rejected, in **Ortiz v. Apfel**, 39 F. Supp. 2d 1275 (D. Kan. 1998):

> Plaintiff argues that the Commissioner's consideration of alcoholism improperly affected his decision to deny benefits and supplemental security income after May 31, 1995. Notwithstanding the inapplicability of the amendments regarding consideration of substance abuse, this argument has a fatal flaw. The ALJ found Plaintiff not disabled after considering both his bipolar affective disorder and his alcoholism. Removing the alcoholism component from the equation does not of itself change the result. If substantial evidence supports the decision that plaintiff was not disabled considering both impairments, then substantial evidence supports a findings of no disability based only upon the bipolar affective disorder. . . . **There is no requirement to separate an impairment based upon substance abuse, until the Commissioner makes a determination of disability.**

**Ortiz v. Apfel**, 39 F. Supp. 2d at 1283 (emphasis added).

Only after the ALJ had made a determination that a claimant is disabled do Pub. L. 104-121 and the regulations direct him to disregard substance abuse and determine whether any or all of a claimant's remaining limitations would render the claimant disabled. See **Ortiz v. Apfel, Id.**; 20 C.F.R. §416.935(b).

18. I have recommended that this case should be remanded for additional proceedings at step five of the sequential evaluation process. On remand, if the Commissioner finds that Plaintiff is disabled, he shall consider whether Plaintiff's alcoholism is a factor material to that disability determination. In doing so, the Commissioner is directed to apply the criteria of 20 C.F.R. §416.935, and address those criteria in his decision.

## IV.    Recommended Disposition

19.    For the reasons stated above, I recommend that Plaintiff's Motion to Reverse be granted and that this matter be remanded for additional proceedings consistent with this Analysis and Recommended Disposition.

**RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE**